I guess this is the last case to be argued this morning, that's United States v. Raniere. I just need one moment to set up please. All right, is it Ms. Blum or Ms. Blum? Ms. Blum. Blum, all right. Yeah, so Ms. Blum you have reserved two minutes for rebuttal. Yes, sir. So that gives you eight to begin. So the floor is yours, you may proceed. May it please the court, Deborah Blum appearing on behalf of Keith Raniere, defendant appellant. The district court's denial of Keith Raniere's Rule 33 violates the Constitution, Supreme Court precedent, the law of this court, the federal rules of evidence, U.S. code, and must be reversed. To sustain the highly inflammatory predicate acts, the government inextricably relied on digital evidence to prove that the alleged victim, who never testified, was underage when photographed. What do you mean by inextricably? Meaning that they relied on the digital evidence to prove her age. They didn't solely rely on that. They also relied on the testimony of the young woman's sister. Well, she didn't actually testify to any photographs being taken. So to establish the photographs were taken in 2005 to establish that she was underage, they needed the digital evidence. But digital evidence, which one do you mean? Because there was the camera, the card, flash card from the camera, and the hard drive. Yes. Which one are you talking about? Right now I'm talking about both. Both, okay. Yes. Well, the government, as I understand it, only introduced for proof of the possession of child pornography the images found on the hard drive itself. And that the camera, the evidence from the flash of the camera was only used to show the interstate element of the use of a camera to prove interstate, that this was created using an interstate device. So can we be clear about you really then arguing the digital, the hard drive, correct? No, Your Honor. So the government in their papers miscites the record frequently. And this is one instance in which they have done so. When they questioned Booth, the FBI examiner who testified to both the hard drive. I understand he did testify to both. But as far as the presence of child pornography in your client's possession, they relied on the hard drive, correct? Yes. However, respectfully, when Booth was testifying, they also continued to reference photos on the camera card to establish that 2005 time frame. So it's my position that they're intercorrect. So that's redundant. Are you saying the evidence that the images were on the hard drive, which by the way, also when you look at the metadata of the hard drive, it has the device that was used to take that photograph. Correct. Are you saying that it was that additional piece of evidence that would be redundant? I'm saying that it was the hard drive and that the 2005 time frame came also from the camera. It might have also come from the camera. But does it matter when it came from a source that you're not challenging? Yes, it matters because that's what led to the discovery of the government's involvement in falsification and planting of evidence. There are 37 files. Well, it's not planted if it comes from a source that's not being challenged. Well, the reason that it wasn't challenged is because the second memory card forensic image was totally and completely withheld within the definition of braiding. That wasn't a second image. It was a copy of the image, correct? No, Your Honor. Are you saying that your client never received the camera, a copy of the flash drive, of the flash card of the camera? With regards to the first camera, the first memory card copy, that's not at issue here. What's at issue is the second forensic card that he did not receive a copy of. Because it was a copy, counsel. How can you claim a copy isn't – how can you claim – as I understand it, they had to make a second copy because the original forensic examiner was no longer available to testify. And so they had to get Booth to redo it because otherwise they would be facing a challenge, a Crawford challenge, that the person who conducted the forensic examination wasn't there. Respectfully, that's a complete misunderstanding and a violation of FBI policy, the Digital Evidence Guide. I'd direct you to our experts report. There's a joint expert report by the four FBI examiners who speak to this very issue, and it's a second re-imaging. And when you make a second re-imaging, you need to do a hash value comparison to the first.  They didn't use a right blocker, right? Not Booth, but originally when somebody else accessed it, they didn't use a right blocker. Counsel, I'm familiar with the right blocker and how when you make an image of something, you have to use a right blocker so the hash values remain the same and you can compare them. And I understand that part of your claim was that there was some evidence which came out during cross-examination that somebody had accessed the flash card from the camera and had not had done so without potentially using a right blocker, which would preserve the comparison of the hash value. Respectfully, this is something different. To establish that this second re-imaging, which is prohibited by FBI protocol, that that is identical, which is needed by scientific standards. Let me, and I don't want to take up all the time because I'm sure my colleagues have questions to ask you. Let me just ask you a simple question about this issue about the camera flash card. This second imaging you're talking about is the one that Booth conducted in order to do his subsequent review, correct? Correct, which the prosecution completely withheld from the press. I asked my question, counsel, if you could just bear with me for a moment, okay? So the second image we're talking about is the one that Booth had to do because the original forensic examiner was no longer available to testify, correct? So he did not have to do it. It's a yes or no? It's not, Your Honor. I'm not asking whether. He didn't have to do it. Counsel, counsel. It's prohibited. Counsel, please. You can't answer my question. I would think you'd want to answer my questions, right? So you can't answer my question if you're speaking over me, okay? So I'm going to just ask you a question. It requires a yes or no answer. I'm not asking why he did it, whether it violates policy. I'm just asking for the simple fact. So we're making sure we're talking about the same thing. The second image we're talking about is the one that agent, forensic examiner card agent Booth did in order to testify at trial, correct? He didn't have to do it in order to testify at trial. It's what he testified to at trial, and respectfully, two people were left off of the chain of custody, and there's a lot of testimony regarding the chain of custody being followed and all of the people being listed on it, which is a complete fabrication. So going back to the fact that we have these seven digital forensic examiners, four of them are former FBI examiners, never before accused the government of tampering, unanimously found that the government was involved in digital planting and falsification of this evidence. Their findings are illegitimately challenged and unrefuted, and the reason why they're unrefuted is the court relied on Loveall's report. So isn't that refuted? I mean, you may disagree with it, but the government submitted an expert who contradicted what your expert said. It wasn't a contradiction because it contained no scientific rebuttal, which is needed. It was never subject to cross-examination. Post-trial affidavits cannot be used because he never testified at trial. This is a Rule 33 motion. That's the point, and so to prevail on a Rule 33 motion for a new trial, you have the burden of establishing that this evidence, if newly discovered, which is an open question, but whether this new evidence would have resulted in an acquittal. And so what about this new evidence would have led a reasonable fact finder to conclude that your client was not guilty on these predicate offenses? So, Your Honor, it's a Brady Rule 33, and the court applied the incorrect standard, the Forbes standard, the general Rule 33. So it's a lesser standard. And if you knew about tampering and planting, in what world would a jury convict? So it is my position that the Brady materials that were withheld, including two people being left off of the chain of custody that the government only disclosed piecemeal four years after in response to the defendant's post-conviction motions. So we've learned they're creating new evidence and saying, oh, there's no newly discovered evidence here. But what Judge Garifuss found was that the evidence presented at trial, the Lovell report, the victim's own affidavit verifying her identity and age in the photos, were a far more plausible explanation for the discrepancy in the metadata than anything that your expert was offering. So he's using it for the truth of the matter of asserted validity, and he is not allowed to do that. Also, two-thirds of his denial is based on Crawford material that violates the Sixth Amendment. Generally, in post-conviction proceedings, it's fully acknowledged that a defendant has lesser due process rights. However, in the instant matter, Lovell did not testify. He relied on Flatley's undisclosed camera settings. This is directly on point to Supreme Court case law, including Smith v. Arizona and Bollcoming v. Mexico. So the reason that his report is unrefuted is that it should not have been accepted by the court. Two-thirds of this denial was based on Sixth Amendment violations. You can't use untested evidence, individuals who never appeared before the jury to be subject to their scrutiny. The judge respectfully served the role of the jury in this matter. All right. Okay, thank you. So you've got two minutes for rebuttal, so we'll now hear from the government. I'm sorry. I just need one moment to clear. You may proceed. Thank you, Your Honor. Good morning, and may it please the Court. My name is Tanya Hajar, and I represent the government on this appeal. Your last name? Hajar. Hajar. All right, Ms. Hajar. I represented the government on appeal of this matter, on the direct appeal in 2002, and I also represented the government in the related mandamus petition in 2023. The district court did not abuse its discretion in finding that Ranieri failed to identify anything that would constitute newly discovered evidence, that is, evidence that could not, with due diligence, have been discovered before or during trial. All of the evidence cited by Ranieri's purported experts were available to Ranieri before and during trial. Ranieri had retained a forensic expert. Ranieri had inspected the Western Digital hard drive, which, as Judge Kahn noted, is the sole device that contained the child pornography at issue here. As to the access by law enforcement of the Canon camera memory card and the second forensic image, all of the evidence that is cited in Ranieri's, that Ranieri claims is newly discovered, was available to him at the time of the trial, before and during trial. Counsel, I know your position is that the Canon camera memory card was never, and its contents were never really used by the government to prove possession of child pornography, only to, as corroboration of it and also as corroboration that a camera that was purchased internationally had been used to produce this image, which is in the metadata of the hard drive, correct? That's correct, Your Honor. So the government didn't even need to really mention the Canon camera memory card. That's precisely right, Your Honor. But let's assume that that was relevant. I read in your brief that the original forensic image of that Canon camera memory card still exists, and that the defense never requested to actually examine that. That's on page 41 of your brief. Is that correct? Yes, Your Honor. Ranieri did not seek to inspect either image of the camera card. I'm sorry, Your Honor. So I just want to understand the facts based on the argument you make at page 41. Yes. So if the government still has and had available the original forensic image, was that original forensic image made using the device that can't write onto it? I'm not sure I follow that, Your Honor. If I may, are you referring to access without a right blocker?  Okay. If I could just go back a little bit and provide context for what happened there. Back in September in 2018, there had been a photo technician at the direction, the presence of the case agent, who downloaded the photographs from the camera card. At that point, no child pornography had been discovered, and provided to the government to provide to counsel, which the government did. After that, at some significant portion of time after that, in February, child pornography was discovered on the Western Digital hard drive. And at that point, the card, I believe, had made a forensic image. And as time passed, and as we got closer to the trial… Made a forensic image of what? Of the camera card? Once they found the child pornography on the hard drive. Yes, Your Honor. I know the hard drive was copied and recopied, and then they had to go back and take out the carved files, which still had child pornography on it. I'm not asking about that. I'm asking about your representation that the original forensic image of the camera memory card was available and is still available. I'm not suggesting that the government has to turn it over. I'm just asking a simple factual question. Is it available? Was it available? And is the original still pristine, meaning that any copy made… Because your opponent's talking about a second copy. It doesn't matter whether there's a second or third copy, as long as a right blocker was used, and the original remains available to be viewed, or examined, or was at the time of trial. I just want to be clear, Your Honor. Certainly the forensic image was available to the defense before and during trial. That was made clear. So they could have found if there was a discrepancy in the metadata, if a right blocker wasn't used, they could have determined that. Let me finish my question. They could have determined that had they asked to conduct a forensic examination or had they done the forensic examination of such. I know they did get to access the data to do forensic examinations. Precisely, and the report reflected that access, Your Honor, and that is why they cross-examined. Ranieri's trial counsel cross-examined the card examiner at length about that access. It is not… Not only was Ranieri able to determine that the camera card had been accessed, he did know that the camera card had been accessed. He asked the card examiner, cross-examined the card examiner repeatedly about that access. I know there was an access and they couldn't tell whether a right blocker was used. All I'm asking, it's a very simple question, when you say the original forensic image is available and was and they didn't ask for it, was that original image created using a right blocker so that we know what was on the original or is it the actual, you know, when a copy was made, was a right blocker used? It's a very simple question. Yes, Your Honor. I recognize it's a simple question. I just want to be precise in my answer. The access predated that forensic image. In other words, the forensic image that was made at that time… And that's why there was cross-examined. That's why… Precisely, Your Honor. It's a simple question, but he was cross-examined about it. Yes, he was, Your Honor. Okay. Thank you. The district court also did not abuse its discretion in finding that any purported newly discovered evidence would have resulted in acquittal. And unless the court has further questions about that, the government would request the court affirm the orders below in full. All right. Thank you very much. Thank you, Your Honors. We'll now hear from Ms. Blum for two minutes of rebuttal. Yes, touching upon something that AUSA Hajjar raised, you cannot have an FBI photo tech and one other individual who's left off of the chain of custody review the unpreserved forensic data. That was done here and left off of the chain of custody. A second forensic image was absolutely not made available to the defense. Booth testified CART protocol only allowed for one forensic image per device, T4783. AUSA Hajjar, during sidebar, represented that Booth did not create any forensic images. Quote, he testified yesterday he received the forensic image. He never said I was the one who imaged the devices. T483 lines two to four. The government was on notice of their affirmative obligation to disclose it after the Rule 16 and 3500 demands during that sidebar. And how is this material? As the Supreme Court ruled in Banks v. Drecke, due process prohibits prosecutor may hide and defense must seek. The government continues to hide and make material representations to this court. In its opposition, it represents that the trial was known that Booth forensically imaged the camera a second time and cites to his testimony. In response to redirect, Booth testified that he created another report, not a second forensic image. Two-thirds of the judge's denial is based on newly created and untested evidence. Also, the government has shifted the number of image, the child pornography images from 18 or so to nine, which is clearly briefed in my outlines. And if you accept Camilla's affidavit, which Supreme Court case law and Second Circuit case law prohibit, she said that there was only one date of child pornography photos taken of her, which is completely against the government's narrative, which said that there were two dates of exploitation and child pornography. So their papers are completely contradictory. Also, a right blocker does not matter. That's not what's important here. Hash values are what's important here. And Loveall, the government's expert, said, in comparing the camera, it is identical to its camera card, and that is completely technically impossible. So Loveall had no scientific refutations. And, in fact, he agreed with many of the defense's assertions. So Loveall, again, this all hinges upon Loveall because Loveall did not date his report in violation of U.S. code and there are cases from this court that say you have to have a dated affidavit. He also violated Daubert. There are just violations abound in this matter. So the jury convicted Mr. Ranieri on all seven counts that he was named in, right? Yes, Your Honor. And they found all 11 of the predicate racketeering acts, correct? Yes, but you can't constructively amend this indictment to disregard the most— But the jury didn't need to find that all 11 racketeering acts had been proven to get the convictions on the counts, right? Of course, Your Honor. However, as said— So why does this matter? Because as said in Andrews v. White, charges of this nature are incredibly inflammatory and they— Well, they're no more inflammatory than the other— in fact, these are probably less inflammatory than the other conduct that he was convicted of, that you're not even challenging as being subject to new evidence, right? Correct. I'm not challenging that, but I respectfully disagree with Your Honor's statement. I do believe that many cases establish— So sex trafficking conspiracy and sex trafficking and forced labor conspiracy, those are bad, but child pornography would make a jury lose its mind and not be able to consider the evidence. Yes, the cases of the Supreme Court and this court have said that it's so highly inflammatory. And with regards to the camera card, the—in summation, the prosecution explicitly used the Canon camera to link the photos to Mr. Ranieri via the other alleged victims who testified, T5371-73, and as I've argued, the second forensic image was absolutely not disclosed at trial, and these are smoke and mirrors representations, and to establish whether these assertions raised by Ranieri are true or false, you need to have a hearing in this matter. All right. Well, thank you both. We will reserve decision. That concludes the cases on the argument calendar. We will also reserve decision on the other case that's on submission. And so with that, Ms. Molina, would you please adjourn the court? Court stands adjourned. Thank you. Thank you.